## No. 1114.

### JOHN CHAFFE, ADM'R, vs. W. W. FARMER.

36 813
106 399

The issues arising under a provisional account filed by a former administrator, and the oppositions thereto are not identical with those presented by a suit for a final account brought against the former administrator, after his removal, by his successor in office. Even if they were identical, the former proceeding would only furnish ground for a plea of *lis pen dens* in the latter suit, which could not be set up except *in limine*.

When an administrator has been removed, he owes to his successor in office an account of all
funds and property which he had received for account of the succession. In an insol-
vent succession, he cannot in such account claim credit for debts of the succession paid
by him on his own responsibility and without judicial order or authority. He was not
vested with power to rank the creditors and distribute the succession funds. Such rank-
ing and distribution can only be made by the court, after hearing to all the creditors
upon proceedings according to law. He must pay over to the new administrator the
funds received by him, for distribution according to law. And it is only upon such pro-
ceedings of distribution that he can assert his claim, contradictorily with all creditors,
for reimbursement of the sums paid out by him in the extinguishment of succession
debts. to the extent that the succession has been benefited by such payments.

APPEAL from the Fifth District Court, Parish of Ouachita.
Dinkgrave, judge ad hoc.

O. J. Boatner and M. J. Liddell for Plaintiff and Appellee.

Talbot Stillman and F. Garrett for Defendant and Appellant.

The opinion of the Court was delivered by

FENNER, J.   W. W. Farmer, the original administrator of the suc-
cession of Charles H. Morrison, was removed from his said office by
final judgment of this Court in June, 1882. Thereafter, John Chaffe
was duly appointed and confirmed as administrator of said succession.
On January 15, 1883, he instituted the present suit against Farmer and,
upon appropriate allegations, prayed that he be cited to appear and
render a full and final account of his administration and after trial for
judgment against him for whatever amount might be found due by him
to the succession of Morrison.

On February 2, 1883, defendant joined issue by answer of general
denial. Shortly afterwards he died. His testamentary executor, W.
A. Collins, subsequently filed appearance as defendant, and on October
2, 1883, he filed an amended answer accompanied by a final account of
Farmer's administration, which he prayed might be filed, and "that
after proper proceedings and due hearing, the said account be fully
homologated by final judgment in the premises."

The case was then set for trial on the 9th of October, but, owing to
illness of defendant's counsel, was continued.

At the February term of 1884, the defendant, after having answered
to the merits, after having filed his final account, and after having even
actively prayed for a final judgment homologating it, presented the
following plea to the jurisdiction of the court:

"W. A. Collins, testamentary executor of the estate of W. W. Farmer,
deceased, respectfully shows: That this Honorable Court is without
jurisdiction of this cause; that the succession of C. H. Morrison, so far

as W. W. Farmer's administration thereof is concerned, has by opera-
tion of law, the Constitution and orders of this court, been *transferred
to the parish of Union,* where the provisional account of W. W. Farmer
and his administrative acts and doings are *to be decided on and heard;*
that the issues of this cause are a necessary part thereof and depend
thereon. Appearer annexes all the orders and decrees relating hereto,
which are shown by the minutes of court as pertaining hereto, and
makes them a part thereof."

Reference to the orders and decrees mentioned exhibits the following
facts: In the succession of Morrison, Farmer, prior to his removal, had
filed a provisional account of his administration, to which sundry cred-
itors had filed oppositions and to which, after Farmer's removal, Chaffe,
administrator, also filed an opposition.

The issues arising on this provisional account and the oppositions
thereto, had, on October 11, 1882, been ordered to be transferred to the
District Court of Union Parish, on account of recusation of the judge
of Ouachita, inability to find a qualified judge *ad hoc,* and failure of the
judge of an adjoining district called to Ouachita to try the case, as pro-
vided in Act 40 of 1880. This order of transfer was made on the mo-
tion of Farmer. No actual transfer of the record took place, and this
is shown to have been in consequence of agreement to that effect be-
tween Farmer and the counsel of Chaffe, administrator, both of whom
preferred to avoid the trouble of going to Union parish and to have the
issues between them adjusted in Ouachita if a qualified judge could be
found, as is apparent from the proceedings in the instant case.

But leaving these things aside, it is clear that the issue presented on
a provisional account, filed by Farmer while administrator, is not iden-
tical with that arising in an action against him, after his removal, by a
succeeding administrator for a final account.

It is said, however, that Chaffe, administrator, engrafted the latter
action upon his opposition to the provisional account. A reference to
that opposition establishes the contrary; for it concludes with the
words "reserving to this opponent the right to sue said Farmer for a
final account and settlement thereof." Thus the right to bring the
present suit not only was not confused in that proceeding, but was
expressly excepted and reserved therefrom.

Even if it were admitted, however, that the relief demanded by
Chaffe, administrator, in his opposition, was identical with that sought
in this action, we are clear that the fact would give rise to nothing but
a question of *lis pendens* of which defendant could only have availed

himself by pleading it *in limine litis*. This suit is brought before a court intrinsically competent to try it both *ratione materiæ* and *ratione personarum*. Indeed, if the suit could be brought at all, it could not be brought in any other tribunal, because it is that of defendant's personal and former official domicile. Although the district judge recused himself, a judge *ad hoc*, to whose qualifications no objection is made, was appointed under the provisions of Act 40 of 1880. There is no possible obstacle to his proceeding with the case, except the objection that a case involving the same issues between the same parties is pending undecided in the District Court of Union Parish. This is *lis pendens* and nothing more. It is of no consequence whether the suit originated in Union parish, or was transferred there. Its pendency is the only pertinent fact. If the parties are willing to stay or ignore that controversy, and to have their rights adjusted in a new suit before a different court, they have a perfect right to do so. They have, in the eye of the law, irrevocably consented to do so—plaintiff by bringing his suit, defendant by joining issue.

It is clear that the exception is unfounded, a mere after-thought conceived in the desire to delay the course of justice, and was properly overruled.

### ON THE MERITS.

The account filed by the defendant shows that Farmer had received, in his capacity of administrator of Morrison's succession, in cash and bonds, the sum of fifty-seven thousand four hundred and sixty dollars and seventy-six cents ($57,460 76).

Against this, he sets up credits of various kinds, aggregating an amount far exceeding the sum received.

These credits fall within various categories.

1. The judge *ad hoc* allowed credit as claimed for expenses of administration, such as taxes, funeral charges, clerk's and sheriff's costs, expenses of sale, etc., amounting to $2679 16. He also allowed credit for certain bonds which had been returned to Chaffe, administrator, to the amount of $9679 54, and rejected all the other credits claimed, giving judgment in favor of plaintiff for $45,101 46, with five per cent interest from judicial demand.

2. A large portion of the remaining credits claimed consists of payments made by Farmer to various creditors of the succession, upon his own responsibility and without any order or authority of court. These credits were disallowed on the grounds that the succession was

insolvent; that its funds were the common pledge of its creditors and were bound to be distributed among them in the mode prescribed by law, according to their respective legal rights thereon, as judicially ascertained after due hearing in regular course of proceeding; that Farmer had no right to settle the rank of creditors and to make an *extra*-judicial distribution of the succession funds by paying particular debts; and that his right to claim reimbursement for payments so made to the extent that the succession has been benefited thereby, cannot be asserted in this suit, to which the creditors are not parties, but can only be set up contradictorily with those creditors when the administrator shall file his account and tableau of distribution.

The correctness of these grounds can hardly admit of dispute. If Farmer were still administrator, and this were his account rendered to the creditors in the succession proceeding, the propriety of the payments made by him, the rank of the creditors whose debts he has paid, and the extent to which such payments had extinguished debts, which, but for the payment, would have been entitled to share in the distribution, would have been questions properly arising and susceptible of determination; and to that extent he would have been entitled to credit.

But Farmer has ceased to be administrator. He has lost the capacity to make a distribution of the succession funds or to take proceedings for that purpose. The relations between him and the creditors of the succession have been sundered. A new administrator has been appointed, to whom alone Farmer is required to account. Farmer cannot set up these credits as against him, because his right to them cannot be settled contradictorily with him in absence of the creditors who are not, and cannot be made, parties to this suit.

Farmer's having disbursed the funds of the succession without authority of law, can furnish no lawful reason for not paying to the new administrator the amount of those funds which came into his hands.

They can only reach the creditors through proceedings for account and distribution to be taken by the new administrator. How can he distribute them until they are paid into his hands? When so paid, Farmer, in right of the creditors whose debts he has settled, and any other creditor, may require account and distribution, and if his just claims are not then allowed he may then, contradictorily with all other creditors, assert and vindicate his rights. But he cannot do it in this proceeding.

If it be a hard case that he should be required to pay over money, a large part of which he may ultimately be entitled to recover back, it is

the consequence of his own improvident and unlawful conduct. The law has very carefully prescribed rules for the administration of estates and for the conduct of administrators. When such officers neglect and violate these rules, they have no just cause of complaint if they bring trouble upon their own heads.

It is a very clear case that the creditors of this succession had and retain the right to have the funds of this succession distributed according to law. No one is authorized to make such distribution except the administrator. He must receive the funds before he can distribute them. Unless Farmer is made to pay them into his hands, they can never be distributed. *Ergo* defendant must pay over.

These conclusions flow so logically and necessarily from the rules of law governing the administration of successions, that they scarcely require the support of judicial authority which does not seem to have been brought to bear very directly upon them.

Nevertheless, the fundamental principles that the removed administrator can no longer make a distribution; that he owes his account, not directly to the creditors, but to his successor in office, and that the latter is the party to whom the creditors must look and with whom they must deal—were long since settled by this Court, Collins vs. Hollier, 13 Ann. 585.

2. This disposes of most of the credits claimed, including that for $7333 33, amount paid by Farmer as the purchase price of property, the sale of which was annulled by this Court in the case of Chaffe vs. Farmer, 34 Ann. 1017. Although that price was undoubtedly applied to payment of succession debts, yet, in that very case, it was held that Farmer must look for reimbursement to proceedings for the distribution of the price of the property when sold; and he must still be referred to that remedy.

We consider this item fully covered by the terms of the opposition, as well as by the decree above referred to. Under no circumstances could this claim be paid from the funds included in this account. It must look for satisfaction to the proceeds of sale of the property when distributed, as held in the case referred to.

3. There are various other credits claimed which are so untenable that we are at a loss how to treat them.

Thus defendant claims credits of nearly $25,000 for proceeds of crops raised on plantations belonging to the succession and which he claims were shipped to Chaffe's commission house in New Orleans, and proceeds of which are held by him or his house. We cannot see what this

has to do with the present account. If the cotton belonged to the succession, the account does not charge Farmer with its value. How then should it be credited with its proceeds? Chaffe, commission merchant, is not Chaffe, administrator. If the succession has claims against Chaffe, as an individual, this is not the place to enforce them.

Similar remarks apply to other credits claimed to stand in the name of Farmer, for account of the succession, on the books of Chaffe's commission house in New Orleans.

4. The claim of fees for services rendered by Farmer, as attorney, to himself as administrator, it is well settled cannot be allowed.

5. We find it impossible to reverse the clear ruling of the district judge rejecting the claim for commissions.

Certain amendments are claimed by appellee and other complaints are made by appellant; but after careful consideration we are satisfied the judgment appealed from has done substantial justice between the parties.

Both parties object to an absurd provision in the judgment, by which the judge ad hoc taxed himself a fee of $150 for his labor in hearing the cause. Of course the allowance is unwarranted by law and may be stricken from the judgment without affecting the question of costs of appeal.

It is, therefore, ordered that the tax of one hundred and fifty dollars "as compensation for the lawyer selected to try this case," be stricken from the judgment and that, with this change, the judgment appealed from be non-affirmed.